UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

ATHANASIUS ONYEMAOBI, EHIMA PATRICK     Index No. 09 CIV 2434
ONAGHINO, LEONARD AGUNWA and CARLENE
BATTISTE-DOWNIE,     ECF CASE (PAC)

Plaintiffs,

-against-

COVENANT HOUSE, COVENANT HOUSE NEW
YORK, AND COVENANT HOUSE UNDER 21,

Defendants.

------------------------------------------------------------------------x

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS PLAINTIFF DOWNIE'S COMPLAINT**

---

**HARRINGTON, OCKO & MONK, LLP**
*Attorneys for Defendants*
*COVENANT HOUSE, COVENANT HOUSE NEW YORK*
*and COVENANT HOUSE UNDER 21*
81 Main Street – Suite 215
White Plains, New York 10601
(914) 686-4800
(914) 686-4824 (fax)

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ...............................................................................-ii-

PRELIMINARY STATEMENT ...........................................................................1

I.      FACTUAL BACKGROUND .....................................................................2

        A.      Downie Violates Her Discovery Obligations ...........................................3

        B.      Defendants Raise Downie's Discovery Violations With The Court ........................5

        C.      Downie's Numerous Discovery Violations Are Exposed .................................7

        D.      Defendants Raise Downie's Persistent Discovery Violations With
                The Court ..............................................................................10

ARGUMENT .............................................................................................16

I.      LEGAL STANDARD ..............................................................................16

II.     DEFENDANTS ARE ENTITLED TO DISMISSAL OF PLAINTIFF
        DOWNIE'S COMPLAINT AS A RESULT OF HER PERSISTENT,
        KNOWING AND WILLFUL DISCOVERY VIOLATIONS ...........................................17

        A.      Downie's Discovery Violations Have Caused Defendants Severe
                Prejudice ..............................................................................18

        B.      Downie's Conduct And Discovery Failures Were Done In Bad Faith,
                And Her Claims of Discrimination and Retaliation Are Without Merit..................23

CONCLUSION .............................................................................................25

i

## **TABLE OF AUTHORITIES**

**Page**

**Cases**

*Abu v. Piramco Sea-Tac, Inc.*, 2009 WL 279036 (W.D.Wash. Feb. 5, 2009)............................. 20

*Arbercheski v. Oracle Corp.*, 650 F.Supp.2d 309 (S.D.N.Y. 2009) ............................................ 19

*Baba v. Japan Travel Bureau International*, 165 F.R.D. 398, (S.D.N.Y. 1996).................... 16-17

*Brady v. Wal-Mart Stores, Inc.*, 2005 WL 1521407 (E.D.N.Y. June 21, 2005).......................... 19

*Cine Forty-Second Street Theatre Corp. v. Allied Artist Picture Corp.*, 602 F.2d 1062
   (2d Cir. 1979).......................................................................................................................... 16

*Collins v. Williams*, 575 F.Supp.2d 610 (D.Del. 2008) ............................................................. 17

*Comby v. Cinemark USA, Inc.*, 2009 WL 2578853 (D.Utah Aug. 19, 2009).............................. 20

*Creative Resources v. Creative Resources*, 212 F.R.D. 94 (E.D.N.Y. 2002).............................. 17

*Daly v. Societe Generale*, 108 F.3d 451 (2d Cir. 1997)............................................................. 18

*Darwish v. Family Dollar Stores, Inc.*, 2010 WL 200861907 (D.Colo. May 20, 2010)............. 20

*EEOC v. Freudenberg-Nok General Partnership*, 2009 WL 909571
   (D.N.H. April 3, 2009)........................................................................................................... 20

*Gilpin v. Philip Morris International, Inc.*, 2002 WL 1471433 (S.D.N.Y. July 8, 2002)........... 16

*Graham v. K.C's General Stores*, 206 F.R.D. 251 (S.D.Ind. 2002) ........................................... 20

*Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47 (2d Cir. 1998) ................................................. 18

*Hamilton v. Niagra Frontier Transportation Authority*, 2008 WL 4724324
   (W.D.N.Y. Oct. 24, 2008)....................................................................................................... 19

*JSC Foreign v. Int. Devel.*, 2005 WL 1958361 (S.D.N.Y. Aug. 16, 2005) ................................. 17

*Novak v. Wolpoff*, 536 F.3d 175 (2d Cir. 2008).......................................................................... 17

*Paluh v. HSBC Bank USA*, 409 F.Supp.2d 178 (W.D.N.Y. 2006) .............................................. 18

**Page**

*Raymond v. Boehringer Ingelheim Pharmaceuticals, Inc.*, 653 F.Supp.2d 151
   (D.Conn. 2009) ................................................................................................................ 19

*Sease v. Doe*, 2006 WL 3210032 (S.D.N.Y. Nov. 6, 2006) ........................................ 17

*Serrano v. Cintas Corp.*, 2006 WL 585714 (E.D.Mich. March 9, 2006) .................... 20

*Sherazi v. Child Time Learning Center, Inc.*, 2008 WL 4792694 (W.D.Okla.
   Oct. 31, 2008) ................................................................................................................ 20

*Spanski Enter. Inc. v. Telewizja*, 2009 WL 3270794 (S.D.N.Y. Oct. 13, 2009) ......... 17

*Townsend v. Exchange Ins. Co.*, 196 F.Supp.2d 300 (W.D.N.Y. 2002)....................... 19

*Valentine v. Museum of Modern Art*, 29 F.3d 47 (2d Cir. 1994) ................................. 16

*Vukadinovich v. Griffith Public Schools*, 2008 WL 5791451 (N.D.Ind. Dec. 10, 2008) ............ 20

*Walter L. Jones v. Niagara Frontier Transportation Authority*, 836 F.2d 731
   (2d Cir. 1987)................................................................................................................. 16

**Rules**
Fed.R.Civ.P. 26 ............................................................................................................ 20
Fed.R.Civ.P. 37............................................................................................................ 16
Fed.R.Civ.P. 45............................................................................................................ 20

Defendants, Covenant House, Covenant House New York and Covenant House Under 21 (collectively "Defendants"), by counsel, Harrington, Ocko & Monk, LLP, as and for their motion to dismiss the Complaint of Plaintiff, Carlene Battiste-Downie ("Downie") with prejudice, as a result of numerous willful violations of her discovery obligations, as well as violations of the Court's discovery orders, submit the following:

## PRELIMINARY STATEMENT

This motion is the result of Plaintiff Downie's systematic and willful abuse of the discovery process, and multiple violations of this Court's direct Orders regarding discovery. Downie's violations and conduct have caused Defendants severe prejudice in defending against Downie's claims. Through her conduct, Downie has demonstrated that no sanction, short of dismissal, will rectify her violations, or attitude towards discovery or provide Defendants with an adequate remedy. Therefore, the Court should exercise its inherent discretion and powers to dismiss Downie's claims and Complaint with prejudice.

Plaintiff Downie brought the present action against Defendants alleging, *inter alia*, violations of Title VII, the Age Discrimination and Employment Act ("ADEA"), the Pregnancy Act, New York State Executive Law §290, and New York City Human Rights Law §8-101; Plaintiff Downie brought this action together with three other former employees of Covenant House, Mr. Onyemaobi, Mr. Onaghinor and Mr. Agunwa, but the claims of those former employees have been resolved. Defendants served Plaintiff Downie with document demands and interrogatories requiring her to produce (1) information concerning her present employment with the Veterans Administration in Georgia, (2) information and documents regarding her attempt to mitigate her damages by seeking employment from institutions or employers other than Defendants, (3) information and documents regarding information she supplied to other

1

employers to obtain employment while simultaneously employed by Covenant House in a full-time capacity, as well as (4) documents and information regarding her communications with others concerning her allegations of discrimination and/or retaliation by Defendants. Despite numerous attempts by counsel for Defendants to ensure that Plaintiff Downie and her counsel complied with their discovery obligations, and produce the information and documents requested, Plaintiff Downie refused. Plaintiff Downie has now also refused to abide by specific discovery orders from the Court not once, but twice; this Court ordered Downie to comply with her discovery obligations and produced the information and documents requested, as well as to execute a Consent Form in order to allow Defendants to obtain Plaintiff Downie's employment files from her present employer, the VA Hospital in Georgia. Downie has refused this Court's direct and specific Orders.

Plaintiff Downie's willful refusal to comply with her discovery obligations in this action, and refusal to obey specific Court Orders, has caused Defendants significant prejudice in being able to defend against Downie's claims and allegations in this action. Plaintiff Downie's willful conduct in refusing to abide by her discovery obligations and this Court's specific Orders entitles Defendants to the remedy of dismissal of Downie's claims with prejudice.

## I.    FACTUAL BACKGROUND

On or about March 17, 2009, Plaintiff Downie filed a Summons and Complaint in this action against Defendants. In her Complaint, Downie alleges, *inter alia*, causes of action against Defendants for violations of Title VII, the ADEA, the Pregnancy Act, and New York State and City Human Rights Laws; Downie apparently alleges that she was discriminated against as a result of her pregnancy or age, and/or retaliated against as a result of being an alleged witness to discriminatory conduct by Defendants. Declaration of John T.A. Rosenthal ("Rosenthal Dec."),

at ¶3.  Downie appears to allege that she was constructively terminated from her job by Defendants, but maintains she was still employment by Covenant House in New York between September 2008 and December 2008, even though working full-time at the VA in Georgia as of September 2008.  Rosenthal Dec., at ¶¶4-5.

On May 22, 2009, Defendants filed and served an Answer to Plaintiff Downie's Complaint and allegations in this action.  Rosenthal Dec., at ¶6.  Defendants specifically denied Plaintiff Downie's allegations and claims, as well as those of the other Plaintiffs.

**A.    Downie Violates Her Discovery Obligations.**

On June 23, 2009, Defendants served Plaintiff Downie with a First Request for Production of Documents.   Rosenthal Dec., at ¶7.   In that document request, Defendants specifically asked for "[A]ny and all documents concerning or relating to other employment or positions held by or performed by [Downie] while [Downie was] employed by Defendants".  *Id.* The document requests also specifically requests for Downie to produce "[A]ny and all documents concerning or regarding [Downie's] attempts to obtain employment after … resigning or failing to return to employment with Defendants …".  *Id.*  The demand also requested that Downie produce "[A]ny and all documents concerning or regarding [Downie's] termination, firing, removal or resignation from employment by Defendants".  *Id.*  It was the understanding of Covenant House that Downie's job at Covenant House was her second job, and she moonlighted at Covenant House evenings and weekends (35 hours or more each week), while being simultaneously employed full-time at other non-profit organizations during the day.   While employed by Covenant House, Downie had been reprimanded numerous times by supervisors for being late or absent from work, likely due to conflicting work schedules with her other full-time employers.

On July 23, 2009, Plaintiff Downie served a Response to Defendants' First Request for Production of Documents. Rosenthal Dec., at ¶8. In her response, Plaintiff Downie interposed three general objections, without making any specific objections as to any of the demands. Downie's responses included no specific objections to Request Nos. 14, 16 and 18.

In conjunction with Downie's Response to Defendants' First Request for Production of Documents, Downie and the other Plaintiffs served Defendants with approximately 652 pages of documents. Those documents appeared to be simply copies of documents Defendants had provided to Plaintiffs in prior EEOC proceedings. Rosenthal Dec., at ¶¶9-10. Conspicuously absent from Downie's document production were: (1) any documents regarding Downie's application to, and employment by her present employer, the Veterans Administration in Georgia, (2) emails or communications between Downie and others regarding any alleged discrimination or retaliation by Defendants, (3) documents of import or significance regarding Downie's employment by at least three other employers while she was simultaneously employed by Defendants, and (4) documents of significance regarding Downie's attempts to obtain employment after her termination and/or resignation from her position with Defendants.

On August 10, 2009, counsel for Defendants wrote counsel for Downie indicating Plaintiff Downie's failure to abide by her discovery obligations with respect to Defendants' First Request for Production of Documents. Rosenthal Dec., at ¶11. In particular, Defendants' counsel raised Downie's failure to produce documents responsive to Request Nos. 14, 16 and 18 relating to positions of employment held by Downie while simultaneously employed by Defendants, as well as documents concerning Downie's attempts to obtain employment after leaving Defendants. *Id.*

On August 10, 2009, Defendants also served Plaintiff Downie with a First Set of Interrogatories. Rosenthal Dec., at ¶12. Included in those Interrogatories were requests for the following information from Downie: (1) persons with knowledge or information regarding Downie's allegations or claims in the Complaint; (2) entities or persons with whom Downie held positions of employment while also employed by Defendants; (3) persons with knowledge or information regarding employment or positions held by Downie while also employed by Defendants; (4) persons who assisted in preparing the answers and responses to the interrogatories, among others. *Id.*

On August 31, 2009, Defendants' counsel called Downie's counsel, Locksley Wade, again requesting that Downie produce documents responsive to Request Nos. 14 and 16, among others. Rosenthal Dec., at ¶¶13-14. Mr. Wade responded in a conclusory fashion, that Downie had "<u>no</u>" documents responsive to these demands. *Id.* Defendants' counsel wrote Downie's counsel that day describing the telephone conversation, as well as Downie's failure to produce documents responsive to Defendants' discovery demands; neither Downie nor Mr. Wade have ever produced information responsive to the demands nor refuted that Downie had in her possession documents responsive to these demands. *Id.*

**B.      Defendants Raise Downie's Discovery Violations With The Court**

On September 16, 2009, counsel for Defendants wrote the Court regarding Downie's persistent discovery violations. Rosenthal Dec., at ¶15. In particular, Defendants' counsel raised the issue of Downie's failure to produce documents responsive to Defendants' First Request for Production of Documents with regard to employment or positions held by Downie while also employed by Defendants, as well as documents concerning Downie's attempts to obtain employment after being terminated or resigning from employment with Defendants, among

others.  *Id.*  Plaintiff Downie provided no adequate response to explain her discovery violations. Rosenthal Dec., at ¶16.

On September 22, 2009, just two days before counsel for the parties were scheduled to appear before the Court, Downie, through counsel, answered Defendants' first interrogatory demands.   Rosenthal Dec., at ¶¶17-18.   Downie responded as follows to the various interrogatories:

1.  Identify person(s) with knowledge or information relating to allegations, assertions, or claims in Plaintiffs' Complaint; Downie responded with just three names of individuals, all of whom work for Defendants;

2.  Identify entities or persons with whom Downie held positions of employment, while also employed by certain of the Defendants.  Downie responded with a single entity, Urban Pathways;

3.  Identify person(s) with knowledge or information regarding positions of employment held by Downie while also employed by Defendants.  Downie responded against with a single individual/entity, Robert Kennedy of Urban Pathways.

Downie's interrogatory responses contained no affirmation or verification from Downie, or any of the other Plaintiffs.  Rosenthal Dec., at ¶19.  Ultimately, Downie provided a Verification on October 23, 2009 for Plaintiff's Response to Defendants' First Set of Interrogatories.  Rosenthal Dec., at ¶20.  This Verification included no indication that she had spoken to any of the other Plaintiffs about providing information to Downie in response to Defendants' Interrogatories, and no indication that Downie was only responding for herself.

On September 24, 2009, counsel for the parties appeared before the Court regarding the discovery dispute concerning Downie's failure to adequately respond to Defendants' discovery demands.  Rosenthal Dec., at ¶21.  During questioning by the Court, Plaintiff's counsel Mr. Wade made the following representations: (1) that his clients had perhaps a single computer amongst the four of them, (2) Plaintiffs, including Downie, were poor record keepers, and (3)

that Mr. Agunwa did not keep records and applies for positions by word of mouth.  Mr. Wade also made representations to Defendants' counsel after the hearing that his clients accessed the Internet using computers at Internet Cafes.  Rosenthal Dec., at ¶21.  These representations turned out to be false.

In response to the commentary and representations to the Court by Downie's counsel Mr. Wade, Defendants served a very targeted, specific Second Set of Interrogatories on Plaintiffs on October 6, 2009.  Rosenthal Dec., at ¶22.  Included in that second set of targeted Interrogatories, were the following requests: (1) identity of person(s) with knowledge relating to Downie's efforts to secure employment after leaving Defendants; (2) identity of organizations or entities with knowledge about Downie's attempts to secure employment after termination or resignation from Defendants; (3) identity of person(s) with knowledge or information regarding Downie's e-mail accounts; (4) identity of person(s) with knowledge or information concerning Downie's allegations of discrimination or retaliation.  Rosenthal Dec., at ¶22.  In response to these targeted, very specific interrogatories from Defendants, Downie and counsel served Defendants with blanket objections on November 9, 2009.  Rosenthal Dec., at ¶23.  Conspicuously absent from these responses to the Second Set of Interrogatories was any information about how she obtained her job with her present employer, or a Verification by Downie (or any of the Plaintiffs) regarding the authenticity or truth of the responses.  *Id.*

**C.     Downie's Numerous Discovery Violations are Exposed.**

On November 13, 2009, counsel for Defendants deposed Ms. Downie.  Rosenthal Dec., at ¶24.  Contrary to the representations of Plaintiffs' counsel, Downie admitted that she owned a personal desktop computer, and that she owned this computer prior to July 2009, the date of Defendants served their First Set of Interrogatories.  *Id.*  Downie also admitted to using

numerous email addresses, including the two personal email addresses, carlenedownie@aol.com and cspice727@aol.com.   Downie admitted that (1) she communicated with individuals using these email addresses; (2) she checked these email addresses often on a daily basis; and (3) she possibly sent emails to another Plaintiff, Mr. Onyemaobi, a former Plaintiff in this action. *Id.* Downie also admitted that she emailed Plaintiff Mr. Onaghinor, also a former Plaintiff. *Id.*  All of this information should have been produced by Downie in response to Defendants' discovery demands, and before her deposition.

Downie also admitted that she maintained files which included documents relating to her employment at Women's Prison Association, as well as documents related to her employment by Urban Pathways; Downie was employed by both of these other non-profit institutions while also employed by Covenant House.   Rosenthal Dec., at ¶¶26-38.    Downie never produced these documents in this litigation, but these documents were responsive to numerous of Defendants' discovery demands.   Rosenthal Dec., at ¶¶26-38.   Downie also admitted having performance evaluations from prior employer, Women's Prison Association, but had refused or failed to produce those documents during discovery.   Rosenthal Dec., at ¶¶26-38.

Downie also testified during her deposition to having a current resume on her home computer, but had failed to produce that resume in response to Defendants' discovery demands. *Id.*   Downie also testified to having sent cover letters to potential employers regarding employment within the past six months, but had failed to produce those letters during discovery. *Id.*   In particular, Downie admitted to having applied for employment with the Department of Homeless Services for Veterans Affairs in Georgia in 2008, but had failed to produce those documents in discovery. *Id.*   Downie also admitted to having sought a second job while

employed by the Veterans Affairs Department as Chief of Social Work, but had failed to produce those documents during discovery. *Id.*

During her deposition, Downie also admitted to having direct deposit slips from her employment at Covenant House relating to her claim that her pay was reduced in alleged retaliation for supposedly seeking leave during her pregnancy, but had failed to produce those documents during discovery. *Id.*

During her deposition, Downie also, for the first time, identified individuals who were allegedly familiar with her claims and allegations in the Complaint against Defendants, including Mr. Shack of Urban Pathways. Rosenthal Dec., at ¶¶26-38. Downie also testified that she failed to produce emails regarding her attempts to seek employment after leaving Covenant House in September 2008. *Id.* Downie also admitted that several of the responses in Plaintiff's Responses to Interrogatories were information about other Plaintiffs, of which she had no personal knowledge, despite submitting a verification attesting to the truth of Plaintiff's responses to those Interrogatories. Rosenthal Dec., at ¶¶26-38.

During questioning of Downie by her counsel, Mr. Wade, Downie disclosed the names of two other individuals with knowledge about the subject matter of this lawsuit: Mr. Trevor Foster and Ms. Debra McKnight; names which were not disclosed by Downie in response to Defendants' interrogatories. *Id.* Mr. Wade also questioned Downie about discussions he had with her about responding to questions in Defendants' Interrogatories; a clear waiver of attorney-client privilege. *Id.* When questioned by Defendants' counsel about this same conversation, Downie's counsel interposed objections and instructed Downie not to answer, even though Downie had waived attorney-client privilege by responding to her lawyer's specific question about this very subject. Downie disclosed that there were emails between herself and another

9

former Plaintiff, Mr. Onyemaobi, clearly responsive to Defendants' discovery demands, none of which had been produced by Downie.  Rosenthal Dec., at ¶¶26-38.

During her deposition, Downie demonstrated a willingness to shade the truth, particularly with respect to what she disclosed to Covenant House and her other employers about her work schedule and responsibilities.  Rosenthal Dec., at ¶¶26-41.  In particular, Downie admitted she had overlapping work schedules as between her position at Covenant House and her position at Urban Pathways, as well as admitting that she had failed to disclose to the appropriate personnel at each of these entities that her work schedules overlapped by 1-1/2 hours.  In addition, Downie admitted she failed to advise her present employer, the VA in Georgia, prior to accepting the position, that she was not sure she had decided to permanently move to Georgia.  Downie also claimed she was still employed by Covenant House and Urban Pathways between September 2008 and December 2008, despite having moved to Georgia in September, and despite having accepted full-time employment with the VA in Georgia as of September 2008.  Rosenthal Dec., at ¶¶26-41.  Thus, through her deposition testimony, Downie demonstrated a willingness to hide or omit pertinent material facts from employers and potential employers about her employment obligations and work schedules to facilitate obtaining employment, and worrying about the truth later.

**D.    Defendants Raise Downie's Persistent Discovery Violations with the Court.**

On December 9, 2009, counsel for Defendants wrote the Court seeking intervention in the discovery dispute.  Rosenthal Dec., at ¶¶42-43.  In the letter, Defendants' counsel pointed out all of Downie's knowing discovery violations and failures, including the fact that: (1) three of the Plaintiffs owned computers, contrary to representation of counsel, (2) all of the Plaintiffs had email accounts and used them on a weekly basis, contrary to representations of counsel, (3)

Downie failed to search her home and work computer for documents responsive to Defendants' discovery demands, (4) Downie failed to look for or produce documents relating to employment by others, while also employed by Covenant House, (5) Downie purposely failed to disclose individuals or entities with alleged knowledge about her attempts to secure employment, (6) Downie failed to disclose names of all persons with information about Downie's allegations of discrimination or retaliation, and (7) the failure by Downie to produce a copy of her resume and cover letters sent to potential employers, among other things. *Id.* Most egregious was Downie's failure to disclose the names of <u>two</u> of her three previous employers (Cardinal McCloskey Services and Women's Prison Association), as well as her present employer, the Veterans Administration in Georgia, in response to Defendants' discovery demands.

On December 16, 2009, counsel for Downie wrote the Court in response to the December 9, 2009 letter of Defendants' letter. Downie's counsel, Mr. Wade, asserted that the Court should reject Defendants' letter because "the Plaintiffs have responded to all of Defendants' discovery requests to date. All documents that were requested were provided to the Defendant unless an objection was raised". Clearly, as Downie testified on multiple instances during her deposition, she had not provided all of the documents requested, and had failed to provide all of the information responsive to Defendants' discovery demands.

On December 18, 2009, the Court held a conference regarding Downie's repeated discovery violations, and failure to abide by her discovery obligations. Rosenthal Dec., at ¶44. During that conference, the Court instructed that Defendants' counsel was to write a letter to the Court on December 30, 2009, outlining exactly what Downie's discovery violations were, and the categories of information or documents which Defendants' counsel believed Downie was obligated to produce. Rosenthal Dec., at ¶44.

On December 30, 2009, counsel for Defendants wrote the Court a lengthy letter indicating exactly what Downie had knowingly failed to produce in discovery. Rosenthal Dec., at ¶45. In that letter, counsel for Defendants outlined twelve categories of documents and information which Defendants were entitled, but which Downie had failed to produce, including: (1) documents relating to Downie's employment by other employers, while also employed by Covenant House, including Women's Prison Association, Urban Pathways, Carl Vinson VA Medical Center and Cardinal McCloskey, (2) documents relating to Downie's attempts to secure employment after allegedly being terminated by or leaving employment of Covenant House, (3) full and complete answers to Defendants' First and Second Set of Interrogatories, with Verifications by Downie for each of those interrogatory demands, (4) names and identities of persons with knowledge or information about Downie being employment by other entities, while also employed by Covenant House, (5) names and identities of individuals with information relating to Downie's claims of discrimination and retaliation by Defendants, and (6) the dates Mr. Wade knew Downie owned a personal computer, and had personal email addresses, among other things. Rosenthal Dec., at ¶45.

On January 11, 2010, counsel for Downie responded to the December 30, 2009 letter of Defendants' counsel. Rather than respond to the letter, and the specific instances of Plaintiff Downie's discovery violations, Plaintiff's counsel simply ignored her failures. Rosenthal Dec., at ¶46. Indeed, the letter of Downie's counsel in response to Defendants' December 30, 2009 letter does not provide any denial that Downie had these documents or information, or provide any basis for her failure to produce the documents and information.

On January 19, 2010, Defendants properly served Downie's present employer, the VA in Georgia, with a Rule 45 Subpoena properly issued out of the Federal Court in the Eastern

District of Georgia. Rosenthal Dec., at ¶47. The VA responded that it would produce the documents requested, including Downie's employment file, if Defendants provided the VA with an Order executed by a Federal Judge, or with the written consent of Downie. Rosenthal Dec., at ¶47. Downie did not move to quash the Subpoena.

On January 20, 2010, the Court held a conference regarding the December 30, 2009 letter of Defendants' counsel. During that Court conference, the Court ordered Downie to produce documents or information responsive to the twelve categories of demands specifically described in the December 30, 2009 letter. *Id.* During that conference, the Court indicated to Mr. Wade that the Court did not believe his clients had been adequately or properly forthcoming with regard to their discovery obligations and information responsive to Defendants' discovery demands. The Court specifically informed Mr. Wade during that conference that if Plaintiffs failed to abide by their discovery obligations, and failed to produce the information requested in the December 30, 2009 letter of Defendants' counsel, Plaintiffs' claims, including those of Downie, would be subject to dismissal. Rosenthal Dec., at ¶¶48-50.

On February 24, 2010, Defendants' counsel provided Downie's counsel, Mr. Wade, with a Consent Form authorizing the VA in Georgia to produce Downie's employment file. Ultimately, Downie refused to sign the Consent Form to allow the VA to produce her employment file to Defendants' counsel. Rosenthal Dec., at ¶51.

On March 5, 2010, Downie produced a Verification of Responses to Defendants' Second Set of Interrogatories, as well as an Affidavit on Discovery Disclosures. Rosenthal Dec., at ¶52. In the Verification, Downie indicates that based on reasonable inquiry, her answers to Defendants' Interrogatories were true and correct to the best of her knowledge. Rosenthal Dec., at ¶¶52-54. However, Downie never answered any of Defendants' second interrogatories.

Rosenthal Dec., at ¶23.  Rather, Downie through counsel, made improper, blanket objections to the second set of interrogatory requests, despite admissions later during her deposition that completely contradicted those interrogatory responses.  *Compare* Rosenthal Dec., at ¶23, *with* Rosenthal Dec., at ¶¶52-54.

In addition, rather than properly abide by the Court's Order to produce documents or information responsive to the twelve categories enumerated in the December 30, 2009 letter of Defendants' counsel, Downie responded as follows: "I have concluded that I furnished all relevant documents that[sic] to the defendants in this action".  Rosenthal Dec., at ¶54.  Downie's admissions during her deposition clearly show her statement to be false.  Of course, Downie is not the arbiter of what is and is not relevant, and Defendants are entitled to documents that are responsive to their discovery demands.  *Id.*  Downie still failed to produce any information about her attempts to seek employment after allegedly leaving the employment of Covenant House, or documents regarding her employment by Women's Prison Associates, Urban Pathways or Cardinal McCloskey.

On March 8, 2010, the Court held another conference with counsel for the parties regarding discovery.  Rosenthal Dec., at ¶¶55-57.  During that conference, Mr. Wade indicated that Downie may have terminated him as her counsel.  *Id.*  Counsel for Defendants again raised the issue of Downie's failure to produce discovery ordered by the Court on February 20, 2010, including but not limited to, (1) her employment files with the VA in Georgia, (2) documents and information relating to employers she worked for while also working for Defendants, and (3) information or documents regarding her claims of discrimination and/or retaliation alleged against Defendants.  During that conference, the Court specifically indicated and reiterated that

Downie had to produce the information responsive to the twelve categories described in the December 30, 2009 letter of Defendants' counsel, or suffer <u>dismissal</u> of her claims. *Id.*

On May 26, 2010, the Court held an additional conference regarding Downie's discovery violations. During that conference, counsel for Downie provided absolutely no explanation as to why Downie had again refused to abide by the Court's discovery orders, other than the assertion that Downie believed the discovery demands were too intrusive. Rosenthal Dec., at ¶58. Downie's counsel also indicated to the Court that Downie did not believe she was obligated to sign the Consent Form provided to her by Defendants' counsel regarding disclosure of her employment files with the VA in Georgia; these files are critical to Defendants' case because Downie apparently has made multiple misrepresentations on her other employment applications regarding the scope of her employment with Covenant House, indicating on one application that she was a part-time employee with Covenant House, when in fact, she worked 35 to 40 hours a week at Covenant House. Rosenthal Dec., at ¶38. Downie also testified that she had not informed the VA in Georgia that she considered moving back to New York after September 2008, despite accepting the job in Georgia.

During this conference, the Court specifically directed Mr. Wade that Downie was to produce all documents or information responsive to the twelve categories described in Defendants' December 30, 2009 letter to the Court, or face the consequence of dismissal of her Complaint with prejudice. Rosenthal Dec., at ¶¶58-61. The Court instructed Mr. Wade that Downie was to produce this information by no later than June 14, 2010, or the Court would allow Defendants to make a motion to dismiss her claims and Complaint with prejudice. *Id.*

As of June 14, 2010, Downie failed to produce any information or documents responsive to the twelve categories contained in the December 30, 2009 letter of Defendants' counsel to the

15

Court. Rosenthal Dec., at ¶62. Nor has Downie given any indication that she is going to comply with the Court's Order, despite numerous opportunities to do so over the last nine months.

## ARGUMENT

### I.   LEGAL STANDARD

Pursuant to Rule 37 of Fed.R.Civ.P., if a party fails to obey an order of the Court to provide or permit discovery, the Court in which the action is pending may dismiss the action or proceeding. Fed.R.Civ.P. 37(b)(2). The imposition of sanctions under Rule 37 lies within the discretion of the District Court, and a decision to dismiss an action for failure to comply with a discovery order will not be reversed unless it constitutes an abuse of discretion. *Valentine v. Museum of Modern Art*, 29 F.3d 47, 49 (2d Cir. 1994). Dismissal with prejudice is a harsh remedy to be used only in extreme situations, and then, only when a Court finds willfulness, bad faith or fault on the part of the prospective party. *Id.* The most severe sanction of dismissal is available to District Courts in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such sanction, but to deter those who might be tempted to such conduct in the absence of this kind of deterrent. *Id.* The severe sanction of dismissal with prejudice may be imposed against a party, as long as the warning has been given that non-compliance with discovery can result in dismissal. *Id.*, at 50; *Walter L. Jones v. Niagara Frontier Transportation Authority*, 836 F.2d 731, 735 (2d Cir. 1987); *Cine Forty-Second Street Theatre Corp. v. Allied Artist Picture Corp.*, 602 F.2d 1062, 1066 (2d Cir. 1979).

Failure to comply with a discovery order is considered willful when the Court's orders have been clear, the party understood them, and the party's non-compliance is not due to factors beyond the party's control. *Gilpin v. Philip Morris International, Inc.*, 2002 WL 1471433, at *3 (S.D.N.Y. July 8, 2002); *Baba v. Japan Travel Bureau International*, 165 F.R.D. 398, 402-03

(S.D.N.Y. 1996).  The sanction of dismissal is particularly appropriate when a party's persistent uncooperativeness indicates no other penalty would be an effective deterrent to future misconduct.  *Id.; Sease v. Doe*, 2006 WL 3210032, at *2 (S.D.N.Y. Nov. 6, 2006); *Collins v. Williams*, 575 F.Supp.2d 610, 617 (D.Del. 2008).  Courts look at six (6) factors when determining whether to dismiss an action for discovery violations:  (1) extent of the party's personal responsibility, (2) prejudice to opposing party, (3) history of dilatory tactics, (4) whether a party's conduct was done in bad faith or willful, (5) effectiveness of other sanctions, (6) meritoriousness of claims.  *Id.*

A party found to have committed discovery violations may be required to pay the attorneys' fees and costs of the party making a Rule 37 motion, as well as fees and costs associated with remedying the discovery misconduct.  *Spanski Enter. Inc. v. Telewizja*, 2009 WL 3270794, at *2 (S.D.N.Y. Oct. 13, 2009); *Novak v. Wolpoff*, 536 F.3d 175 (2d Cir. 2008); *Creative Resources v. Creative Resources*, 212 F.R.D. 94, 102 (E.D.N.Y. 2002); *JSC Foreign v. Int. Devel.*, 2005 WL 1958361 (S.D.N.Y. Aug. 16, 2005).

## II.   DEFENDANTS ARE ENTITLED TO DISMISSAL OF PLAINTIFF DOWNIE'S COMPLAINT AS A RESULT OF HER PERSISTENT, KNOWING AND WILLFUL DISCOVERY VIOLATIONS

Plaintiff Downie's willful and contumacious conduct in knowingly and purposely violating her discovery obligations in this action, and then repeatedly violating Court orders directing her to produce certain categories of discovery, indicates that the only proper penalty for this conduct is dismissal of her Complaint and claims with prejudice.  Defendants have clearly satisfied all six factors courts use to decide whether to dismiss a Complaint due to a plaintiff's discovery violations.

**A.    Downie's Discovery Violations Have Caused Defendants Severe Prejudice.**

Downie filed this action alleging, among other things, violations of Title VII, the Age Discrimination and Employment Act, and the Pregnancy Act.  Rosenthal Dec., at ¶3.  Downie claims that she is entitled to damages as a result of this alleged discrimination and/or retaliation, including but not limited to, lost back pay, front pay, and lost wages, and damages for emotional and mental distress, among other things.  During her deposition, Downie appeared to allege, for the first time, that rather than being terminated by Covenant House, she resigned as of December 2008, but asserts that she was constructively terminated claiming that the environment at Covenant House effectively precluded her from doing her job.  Rosenthal Dec., at ¶4.

As part of their affirmative defenses, Defendants are entitled to assert that Downie failed to mitigate her damages.  *Paluh v. HSBC Bank USA*, 409 F.Supp.2d 178, 204 (W.D.N.Y. 2006).  The burden is on a defendant to demonstrate at trial that a plaintiff has failed to satisfy the duty to mitigate.  *Daly v. Societe Generale*, 108 F.3d 451, 456 (2d Cir. 1997).  A defendant may establish that a plaintiff has failed to mitigate damages by showing (1) suitable work existed, and (2) the employee did not make reasonable efforts to obtain that employment.  *Id.*

In determining whether a plaintiff has fulfilled her obligation to attempt to mitigate damages, or whether a defendant has demonstrated plaintiff's failure to do so, courts look at factors like individual characteristics of the claimant and the job market, and the quantity and quality of the particular measures undertaken by a plaintiff to obtain alternate work.  *Id.*; *Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 53 (2d Cir. 1998).  An employer is <u>released</u> from the duty to establish the availability of comparable employment if the employer can prove that the employee made <u>no</u> <u>reasonable</u> efforts to seek employment.  *Id.*  An employer can fulfill its burden to demonstrate lack of reasonable effort by an employee by showing that the employee

failed to send letters, resumes or formal applications for work, or had limited or no contact with employers during a particular period. *Arbercheski v. Oracle Corp.*, 650 F.Supp.2d 309, 314 (S.D.N.Y. 2009); *Hamilton v. Niagra Frontier Transportation Authority*, 2008 WL 4724324, at *1 (W.D.N.Y. Oct. 24, 2008). Evidence demonstrating the failure of an employee to make diligent efforts to secure employment either in anticipation of or after termination by an employer is grounds to preclude an employee from obtaining an award of front pay. *Raymond v. Boehringer Ingelheim Pharmaceuticals, Inc.*, 653 F.Supp.2d 151, 158 (D.Conn. 2009).

With respect to resignation or discharge and damages, a constructive discharge occurs when an employer deliberately makes an employee's work condition so intolerable, that the employee is forced into involuntary resignation. *Brady v. Wal-Mart Stores, Inc.*, 2005 WL 1521407, at *6 (E.D.N.Y. June 21, 2005). However, a plaintiff who voluntarily resigns and is not subjected to constructive discharge generally <u>cannot</u> recover back pay. *Id.*; *Townsend v. Exchange Ins. Co.*, 196 F.Supp.2d 300, 308 (W.D.N.Y. 2002).

As a result of Plaintiff Downie's claims of discrimination, retaliation and constructive discharge, as well as claims of mental and emotional distress, loss of enjoyment of life, impairment and damage of her good name, as well as front and back pay, Downie was required to mitigate her damages. Therefore, Defendants are entitled to have Downie fully and accurately comply with their discovery demands regarding mitigation of damages, including providing names of individuals who had information about her attempts to obtain employment, resumes and cover letters sent to potential employers, as well as cover letters, resumes and employment applications with respect to her actually obtaining employment with the VA in Georgia, as well as seeking second jobs while employed by the VA. Despite two Court Orders, Downie has refused to provide any of this information to Defendants. As a result of Downie's absolute

refusal to provide this information to Defendants, Defendants have been prejudiced in their attempts to demonstrate Downie's failure to mitigate her damages.

Moreover, Downie's numerous misrepresentations about her claims and computer use during discovery, as well as misrepresentations on various employment documents, entitle Defendants to discovery of her employment files of her former employers, and present employer. Pursuant to Fed.R.Civ.P. 26 and Rule 45, a party has a right to obtain materials from a third party absent a showing by the party refusing to produce the information of privilege or privacy. *Darwish v. Family Dollar Stores, Inc.*, 2010 WL 200861907 (D.Colo. May 20, 2010); *Serrano v. Cintas Corp.*, 2006 WL 585714 (E.D.Mich. March 9, 2006); *Vukadinovich v. Griffith Public Schools*, 2008 WL 5791451 (N.D.Ind. Dec. 10, 2008). Discovery of third parties is allowed, even if the information demanded is not directly related to the claims or defenses identified in the pleadings, but the information may still be relevant to a broader subject matter at hand, and meets the Rule's good cause standard. *Id.*; *EEOC v. Freudenberg-Nok General Partnership*, 2009 WL 909571 (D.N.H. April 3, 2009). Discovery of employment files in cases involving alleged discrimination is particularly appropriate where a plaintiff has been untruthful with respect to employment applications to subsequent employers. *Abu v. Piramco Sea-Tac, Inc.*, 2009 WL 279036, at *2 (W.D.Wash. Feb. 5, 2009); *Graham v. K.C's General Stores*, 206 F.R.D. 251, 256 (S.D.Ind. 2002). In particular, courts have denied motions to quash subpoenas on non-parties filed by plaintiffs seeking to limit discovery, particularly when that discovery is related to the issue of failure to mitigate damages. *Sherazi v. Child Time Learning Center, Inc.*, 2008 WL 4792694 (W.D.Okla. Oct. 31, 2008); *Comby v. Cinemark USA, Inc.*, 2009 WL 2578853 (D.Utah Aug. 19, 2009).

In this instance, Defendants have numerous bases for requesting that Plaintiff Downie produce employment information from her present and former employers.  First, Defendants are entitled to discovery regarding Downie's attempts to mitigate her damages by obtaining employment, after leaving Covenant House.  Second, Defendants are entitled to discovery as to what Downie told potential future employers to determine what Downie disclosed to them about her situation at Covenant House.  The latter is particularly true given that Plaintiff Downie has made misrepresentations on other employment applications regarding the scope and extent of her work at Covenant House, and made contradictory statements about what she disclosed to employers as between her deposition testimony and responses to interrogatories in this action.  In particular, Defendants are entitled to obtain cover letters, resumes, and employment applications sent by Downie to potential employers to see if she disclosed allegedly being terminated by or resigning from Covenant House and for what reasons.

Third, Plaintiff Downie waived any right to preclude Defendants from obtaining this information from past and present employers based on privacy, as a result of her bringing an action requesting damages as a result of alleged mental and emotional distress, and other financial damages, including front and back pay.

Fourth, Downie has waived privacy concerns by failing to move to quash not one, but four Rule 45 Subpoenas on her former and present employers, Women's Prison Association, Cardinal McCloskey, Urban Pathways, and the VA, as well as by affirmatively making representations during her deposition testimony that she discussed matters involving allegations of discrimination and retaliation by Covenant House with the President of Urban Pathways, Robert Kennedy.  Rosenthal Dec., at ¶¶26-38.

21

Fifth, Downie has waived any objection based on privacy to Defendants' obtaining her employment files from her present employer, the VA in Georgia, by affirmatively stating that she considered herself to still be employed by Covenant House and Urban Pathways between September 2008 and December 2008, despite having applied for and accepted employment by the VA in Georgia in September 2008.  Indeed, Downie apparently affirmatively misrepresented to the VA in Georgia her intentions regarding that employment there, testifying at her deposition that she did not disclose to the VA in Georgia the fact that she was not sure she would remain in Georgia as of September 2008, when she accepted employment; Downie claims she considered returning to New York City to continue employment with Urban Pathways, and possibly Covenant House, for no less than four months, September 2008 through December 2008.  In fact, Downie testified she did not believe the VA in Georgia needed to know about her other work situation.

As a result of Downie's claims of emotional and mental distress, and damages as a result, as well as her claims for front and back pay based on constructive termination by Covenant House, and Downie's blatant misrepresentations on employment applications, Defendants are entitled to information from her, and her past and present employers regarding Downie's employment situation.  Downie violated her discovery obligations by repeatedly refusing to produce this information to Defendants despite Court Orders requiring her to do so.  As a result of Downie's discovery violations, and violations of Court Orders, Defendants have been severely prejudiced in their attempts to demonstrate that Downie either failed to mitigate her damages, or was not constructively terminated by Covenant House, or did not suffer discrimination or retaliation by Defendants.

**B.     Downie's Conduct And Discovery Failures Were Done In Bad Faith, And Her Claims of Discrimination and Retaliation Are Without Merit.**

As described above, Defendants have satisfied the first three factors Courts look at when assessing whether to dismiss an action for discovery violations: (1) Downie was personally responsible for failing to produce relevant information about her mitigation of damages, and hiding the information from Defendants, (2) Defendants have been prejudiced by Downie's refusal to produce this information, and (3) Downie has a history of dilatory discovery tactics in this litigation.

Moreover, Defendants have satisfied the other three factors with respect to the appropriateness of the Court dismissing Downie's Complaint and claims in this action with prejudice.  As demonstrated above, Downie's refusal to abide by her discovery obligations, and her violations of several Court Orders, were done in bad faith and/or were willful.  It is clear that Downie is hiding her various misrepresentations made to other employers and Covenant House regarding her work schedule, work obligations, and rationale for leaving various employers, including leaving her employment at Covenant House to take up employment with the VA in Georgia as of no later than September 2008.  While Downie maintains that she has no other documents or information responsive to Defendants' discovery demands, Downie's own deposition testimony demonstrates that these assertions are patently false.

Importantly, the documents produced by Downie's former employers, to which Downie did not object, show that Downie has a history of making material misrepresentations and omissions on her employment applications in order to obtain employment.  These applications show that Downie has a history of failing to fully explain to her potential employers the significant time commitments she had with Covenant House; time commitments which she routinely violated by either failing to show up to work on time, or failing to show up to work at

all.  Thus, Downie's failures to respond to Defendants' discovery demands, as well as her failure to respond to Court Orders, demonstrates the bad faith and willfulness of her conduct.

In addition, Downie's repeated refusal to abide by Court Orders directing her to produce documents or to execute a Consent Form show that other sanctions of lesser degree will prove ineffective.  In fact, Downie's refusal to sign a Consent Form with respect to her employment files with the VA in Georgia, and refusal to answer Defendants' First or Second Set of Interrogatories fully, demonstrates the futility of lesser sanctions other than dismissal.

Lastly, Downie's claims are absolutely without merit.  By her own account, Downie was not terminated from Covenant House, rather, she simply left in September 2008 to obtain employment with the VA in Georgia.  Thus, Downie cannot, and has not, demonstrated any validity to her claim of retaliation by Covenant House for her being a witness to other discriminatory acts alleged by former Plaintiffs in this action with respect to Covenant House.

Moreover, there is an absolute failure of evidence to suggest that Downie was discriminated against based on her pregnancy, or request for maternity leave under the FMLA.  To the contrary, Downie was given all of the maternity leave she requested consistent with Covenant House's workplace policies regarding the amount of such leave.  In fact, Downie came back to work at Covenant House after her maternity leave was over, continued work at Covenant House for an additional 7 or 8 months, and then left her position of her own accord to take up employment at the VA in Georgia, where she purchased and owns a home.  Consistent with those circumstances, is the fact Downie left her employment with Urban Pathways at the same time, having filed no claim against Urban Pathways for discrimination and/or retaliation.  Therefore, Plaintiff Downie has provided no evidence to suggest her claims of discrimination

and/or retaliation have any merit.  This final factor, like all six other factors, weighs in favor of dismissal of her claims with prejudice.

## CONCLUSION

For the reasons described above, and in the accompanying Declaration of John T.A. Rosenthal, Defendants' motion to dismiss the Complaint of Plaintiff, Carlene Battiste-Downie with prejudice, as a result of numerous willful violations of her discovery obligations, as well as violations of the Court's discovery orders, should be granted in its entirety.  Pursuant to Rule 37, Defendants request that they be allowed leave to file a motion against Downie for attorneys' fees and costs incurred by Defendants in defending against her claims in this action, and uncovering Downie's discovery violations, and misrepresentations regarding discovery.

Dated:    White Plains, New York
          June 23, 2010

                              HARRINGTON, OCKO & MONK, LLP


                                      s/ John T.A. Rosenthal
                          By:    _____
                                 Kevin J. Harrington, Esq. [KH-5027]
                                 John T. A. Rosenthal, Esq. [JR-4819]
                                 *Attorneys for Defendants*
                                 *COVENANT HOUSE, COVENANT HOUSE*
                                 *NEW YORK, COVENANT HOUSE UNDER 21*
                                 81 Main Street, Suite 215
                                 White Plains, NY 10601
                                 (914) 686-4800